1
2
3
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
4
AT SEATTLE
5
TOP NOTCH SOLUTIONS, INC.,
et al.,
6
7
Plaintiffs,
C17-827 TSZ
8
v.
ORDER
CROUSE AND ASSOCIATES
9
INSURANCE BROKERS, INC., et al.,
10
Defendants.
11
THIS MATTER comes before the Court on a motion for partial dismissal brought
12
by defendant Crouse and Associates Insurance Brokers, Inc. ("Crouse"), docket no. 29,[1]
13
and on a motion to dismiss brought by defendant Pucin & Freidland, P.C. ("Pucin"),
14
docket no. 28. Having reviewed all papers filed in support of, and in opposition to, each
15
motion,[2] the Court now enters the following order.
16
17
_____

18
[1] Although Crouse seeks to dismiss plaintiffs' Amended Complaint, docket no. 26, it has not addressed all
of the claims alleged against it in such pleading, and thus, the Court treats Crouse's motion as requesting
19
only partial dismissal.

20
[2] Both Crouse and plaintiffs have presented materials outside the pleadings. The Court has considered
such documents only as appropriate in the context of a Rule 12(b)(6) motion and without converting the
pending motions into ones for summary judgment. *See* Fed. R. Civ. P. 12(d); *see also* *Johnson v. Fed.*
21
*Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015) ("Although as a general rule we may not
consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, we may consider
extrinsic evidence not attached to the complaint if the document's authenticity is not contested and the
22
plaintiff's complaint necessarily relies on it.").

23

ORDER - 1

**Background**

Although not the model of clarity, plaintiffs' Amended Complaint appears to assert the following claims:  (i) breach of contract; (ii) breach of the duty of good faith and fair dealing; (iii) violation of Washington's Insurance Code, namely RCW 48.30.140 & .150; (iv) conversion; (v) unjust enrichment; (vi) violation of Washington's Collection Agency Act ("WCAA"); (vii) fraud and negligent misrepresentation; (viii) violation of Washington's Consumer Protection Act ("CPA"); (ix) intentional infliction of emotional distress or outrage; and (x) intentional interference with business expectancy.  *See* Am. Compl. at § IV (docket no. 26).  Although all ten claims appear to be alleged against Crouse, Crouse moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of only the first, third, sixth, seventh, eighth, and ninth claims.  Pucin seeks dismissal of all of the claims that seem to be asserted against it, namely the sixth, seventh, eighth, and ninth claims.

In July 2010, plaintiff Top Notch Solutions, Inc. ("Top Notch"), of which plaintiff Habib (Robert) Rashidi was chief officer, *see id.* at ¶¶ 1.1.1 & 1.1.2, entered into a Brokerage Agreement with Crouse.  *See* Ex. 1 to Moore Decl. (docket no. 30).  Pursuant to this agreement, Top Notch served as an insurance broker, obtaining policies for its clients, which were taxicab drivers, driver groups, or companies, through Crouse.  *See id.*; *see also* Am. Compl. at ¶¶ 3.1-3.7 (docket no. 26).  Plaintiffs allege that Crouse entered into agreements with Top Notch's competitors for the purpose of consolidating all taxicab insurance purchasing and taking such business away from Top Notch.  *See* Am. Compl. at ¶ 3.16 (docket no. 26).  According to plaintiffs, Crouse failed to support

them in their efforts to collect premiums, and instead either created incentives for Top Notch's clients to cease paying premiums and switch to insurance policies obtained from Crouse's developing monopoly or advanced the premiums at issue to the insurance carriers and sought reimbursement from Top Notch. *See id.* at ¶¶ 3.20-3.25.

Crouse employed Pucin, an Illinois-based law firm, to collect from plaintiffs the premiums Crouse had paid on behalf of Top Notch's clients. *See id.* at ¶¶ 3.25-3.26. During its collection efforts, Crouse and/or Pucin made complaints to the Washington State Insurance Commissioner about plaintiffs, which plaintiffs contend were false, and which led to multiple audits that plaintiffs assert were unwarranted. *See id.* at ¶¶ 3.23, 3.26, & 3.35. According to plaintiffs, Crouse improperly withheld earned commissions and converted plaintiffs' funds to its own use. *Id.* at ¶ 4.5. Top Notch has since been involuntarily dissolved, and Mr. Rashidi has allegedly suffered physical and emotional distress. *Id.* at ¶¶ 1.1.1 & 3.37.

**Discussion**

**A.     Standard of Review**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 558. A complaint may be lacking for one

of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim.  _Robertson v. Dean Witter Reynolds, Inc._, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  _Usher v. City of Los Angeles_, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief.  _Twombly_, 550 U.S. at 570.  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  _Lopez v. Smith_, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.**   **Contract Claim**

The Amended Complaint accuses Crouse of breaching its agreements and contracts with plaintiffs.  Am. Compl at ¶ 4.2 (docket no. 26).  It does not, however, indicate with particularity which agreements or contracts, or which provisions of such agreement or contracts, were breached.  The only contract contained in the record is the Brokerage Agreement attached to Crouse's attorney's declaration.  Ex. 1 to Moore Decl. (docket no. 30).  Although plaintiffs clearly allege nonpayment of earned commissions, Am. Compl. at ¶ 4.5 (docket no. 26), the Brokerage Agreement does not itself require Crouse to pay commissions.  Crouse's motion to dismiss is therefore GRANTED in part with respect to plaintiffs' breach of contract claim, and such claim is DISMISSED without prejudice and with leave to amend.  In conjunction with any amended pleading, plaintiffs shall refer specifically to the agreements or contracts that were allegedly breached and shall attach copies of such documents.

## C.   Statutory Claims

### 1.   Washington's Insurance Code

The Amended Complaint alleges that Crouse violated RCW 48.30.140(1) and RCW 48.30.150(1).  Am. Compl at ¶ 4.4 (docket no. 26).  RCW 48.30.140(1) provides:

> Except to the extent provided for in an applicable filing with the commissioner then in effect, no insurer, insurance producer, or title insurance agent shall, as an inducement to insurance, or after insurance has been effected, directly or indirectly, offer, promise, allow, give, set off, or pay to the insured or to any employee of the insured, any rebate, discount, abatement, or reduction of premium or any part thereof named in any insurance contract, or any commission thereon, or earnings, profits, dividends, or other benefit, or any other valuable consideration or inducement whatsoever which is not expressly provided for in the policy.

RCW 48.30.150(1) states:

> No insurer, insurance producer, title insurance agent, or other person shall, as an inducement to insurance, or in connection with any insurance transaction, provide in any policy for, or offer, or sell, buy, or offer or promise to buy or give, or promise, or allow to, or on behalf of, the insured or prospective insured in any manner whatsoever:
>
> (a) Any shares of stock or other securities issued or at any time to be issued on any interest therein or rights thereto; or
>
> (b) Any special advisory board contract, or other contract, agreement, or understanding of any kind, offering, providing for, or promising any profits or special returns or special dividends; or
>
> (c) Any prizes, goods, wares, gift cards, gift certificates, or merchandise of an aggregate value in excess of one hundred dollars per person in the aggregate in any consecutive twelve-month period.  This subsection (1)(c) does not apply to title insurers or title insurance agents.

Crouse argues that no private right of action exists to enforce these provisions of RCW 48.30.140 and .150.  A violation of RCW 48.30.140 or .150, however, constitutes an unfair method of competition and/or an unfair or deceptive act or practice in the conduct of the business of insurance and, as a result, is potentially actionable under the

CPA. _See_ RCW 48.30.010(1)&(2); _see also Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co._, 105 Wn.2d 778, 786, 719 P.2d 531 (1986) ("A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated."). The Amended Complaint's citations to RCW 48.30.140 and .150 are treated as alleging CPA claims based on per se unfair or deceptive methods, acts, or practices. Crouse makes no argument that such CPA claims are insufficiently pleaded, and its motion to dismiss such claims is DENIED.

## 2. **Washington's Collection Agency Act**

The Amended Complaint also alleges that both Crouse and/or Pucin violated three provisions of the WCAA, namely (i) RCW 19.16.110, which requires that a collection agency or out-of-state collection agency obtain a license before engaging in such business in Washington; (ii) RCW 19.16.250, which prohibits licensees from engaging in certain activities, including aiding or abetting an unlicensed person to engage in business as a collection agency, as well as communicating with a debtor or failing to communicate with a debtor in one of the enumerated ways; and (iii) RCW 19.16.440, which declares that operating as a collection agency or out-of-state collection agency without a license or committing an act prohibited by RCW 19.16.250 are unfair acts or practices or unfair methods of competition in the conduct of trade or commerce for purposes of the CPA. Crouse argues that plaintiffs cannot maintain a suit under the WCAA, citing _Paris v. Steinberg & Steinberg_, 828 F. Supp. 2d 1212 (W.D. Wash. 2011), but that decision

simply makes clear that violations of the WCAA give rise to a CPA claim, as opposed to an independent cause of action.[3]  *See also* *Hangman Ridge*, 105 Wn.2d at 786.

With respect to plaintiffs' CPA claim premised on WCAA violations, Pucin separately asserts that plaintiffs have not alleged any damages proximately caused by Pucin's failure to obtain a license as an out-of-state collection agency because plaintiffs have not asserted that they believed Pucin was licensed or that they would have taken different actions if they had known Pucin was not licensed.  Pucin cites no authority for the proposition that plaintiffs must plead or prove such elements.  Rather, if Pucin needed to have a license to engage in the debt collection activities alleged in the complaint,[4] then Pucin's violation of the licensing provision would be viewed as a "but for" cause of any injury plaintiffs suffered from the debt collection activities.  *See* *Moritz v. Daniel N. Gordon, P.C.*, 895 F. Supp. 2d 1097, 1114-15 (W.D. Wash. 2012).  Plaintiffs' allegations that the unlicensed debt collection activities diverted business away from Top Notch, caused Top Notch to endure multiple audits and incur attorney's fees and costs, and siphoned off Mr. Rashidi's time and resources sufficiently plead the requisite injury and damages for a CPA claim.  *See* *id.* (denying an unlicensed out-of-state collection

---

[3] Crouse has not moved to dismiss plaintiffs' WCAA claims on the grounds that, because it is not a collection agency or an out-of-state collection agency, it is not required to obtain a license, or that, because it is not a licensee, it is not subject to the provisions of RCW 19.16.250.  In any amended complaint, plaintiffs shall clarify whether they are pursuing a CPA claim against Crouse based on a WCAA violation and, if so, on what theory.

[4] Pucin contends that the work it performed on Crouse's behalf was as counsel of record in matters in which plaintiffs were adverse parties, and that it cannot be sued under the CPA or WCAA for such conduct.  *See* Pucin's Motion at 15-16 (docket no. 28).  The Court declines to address this issue because doing so would require the Court to consider materials outside the pleadings.  *See* Fed. R. Civ. P. 12(d).

agency's motion for summary judgment, reasoning that evidence of $7.75 in postal charges adequately supported the plaintiff's claim of injury stemming from unlicensed collection activities). Thus, Pucin's motion to dismiss plaintiffs' CPA claim, to the extent it is based on Pucin's noncompliance with RCW 19.16.110, is DENIED.

Pucin also argues that it cannot be held in violation of RCW 19.16.250 because it is not licensed as an out-of-state collection agency. The Court agrees. RCW 19.16.250 applies only to licensees. *See* *Moritz*, 895 F. Supp. 2d at 1113. This deficiency in the operative pleading cannot be cured. Thus, as to plaintiffs' CPA claim against Pucin premised on violation of RCW 19.16.250, Pucin's Rule 12(b)(6) motion is GRANTED, and such claim is DISMISSED with prejudice.

### 3. Consumer Protection Act

In addition to the Insurance Code and the WCAA, on which CPA claims are founded, the Amended Complaint references two substantive provisions of the CPA, namely RCW 19.86.030, which declares unlawful every contract, combination, or conspiracy in restraint of trade or commerce, and RCW 19.86.040, which prohibits monopolies. These claims are alleged only against Crouse. The CPA was enacted to "promote free competition in the marketplace for the ultimate benefit of the consumer." *Murray Publ'g Co. v. Malmquist*, 66 Wn. App. 318, 324-25, 832 P.2d 493 (1992) (quoting *State v. Black*, 100 Wn.2d 793, 799, 676 P.2d 963 (1984)). In construing RCW 19.86.030 and .040, courts are guided by decisions involving comparable federal statutes, like the Sherman Act. *Id.* at 325.

Section 1 of the Sherman Act, 15 U.S.C. § 1, after which RCW 19.86.030 is modeled, does not prohibit all contracts or combinations that restrain trade, but only those that unreasonably restrain trade. *See Murray Publ'g*, 66 Wn. App. at 325 (citing *Business Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717 (1988)). To determine whether a restraint is unreasonable, courts apply the "rule of reason." *Id.*; *see also Cabela's Retail, Inc. v. Hawks Prairie Inv., LLC*, 2013 WL 3089516 at *7 (W.D. Wash. June 18, 2013), *aff'd*, 658 Fed. App'x 308 (9th Cir. 2016). If a party cannot establish that a restraint is per se unreasonable (*e.g.*, price fixing, dividing markets, or tying), it must demonstrate that the challenged practice results in "an actual injury to competition." *See Cabela's*, 2013 WL 3089516 at *7. To show the requisite actual injury, a party must identify the relevant market, including its geographic scope and set of "reasonably interchangeable" products, and present evidence regarding competitors with the actual or potential ability to "deprive each other of significant levels of business." *Id.*

To prevail on a claim of monopolization, a party must prove (i) possession of monopoly power in the relevant submarket; (ii) willful acquisition or maintenance of that power; and (iii) causal antitrust injury. *Pac. Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992) (setting forth the elements of a claim under Section 2 of the Sherman Act, 15 U.S.C. § 2). To establish a claim of attempted monopolization, a party must show (i) specific intent to control prices or destroy competition; (ii) predatory or anticompetitive conduct to accomplish the monopolization; (iii) dangerous probability of success; and (iv) causal antitrust injury. *Id.*

1    Crouse argues that plaintiffs have not even "parroted" the elements of their

2    restraint of trade and monopolization claims, let alone set forth facts to indicate more

3    than mere speculation of a right to relief.  The Court agrees that the Amended Complaint

4    is deficient, but not for the reason articulated by Crouse.  Plaintiffs accuse Crouse of

5    certain actions (providing untimely coverage quotations, failing to disclose premium

6    increases until after policies were already bound, incentivizing nonpayment of premiums,

7    and advancing premiums) that are just as consistent with antitrust conduct as with

8    competitive behavior, and such allegations do not, standing alone, form a "plausible"

9    claim.  _See_ _Twombly_, 550 U.S. at 554-63.  Moreover, plaintiffs' allegation that Crouse

10   formed agreements with Top Notch's competitors to "consolidat[e] all taxicab insurance

11   purchasing via a single monopoly entity," Am. Compl. at ¶ 3.16 (docket no. 26), does not

12   advance their antitrust claims beyond the threshold of plausibility because plaintiffs have

13   not pleaded how such agreements injured competition.  For example, plaintiffs do not

14   assert that, as a result of the agreements at issue, all taxicab drivers, groups, and

15   companies within the region were forced to procure insurance either directly or indirectly

16   through Crouse or that some other antitrust injury (as opposed to the harm to Top Notch's

17   own business) occurred.  Thus, Crouse's motion to dismiss plaintiffs' CPA claims under

18   RCW 19.86.030 and .040 is GRANTED, and such claims, which are alleged only against

19   Crouse, are DISMISSED without prejudice and with leave to amend.

20   **D.    Fraud and Misrepresentation**

21        Under Washington law, the elements of fraud (intentional misrepresentation) are:

22   (i) representation of an existing fact; (ii) materiality; (iii) falsity; (iv) the speaker's

23

knowledge of its falsity; (v) intent of the speaker that it should be acted upon by the plaintiff; (vi) the plaintiff's ignorance of its falsity; (vii) the plaintiff's reliance on the truth of the representation; (viii) the plaintiff's right to rely upon it; and (ix) damages suffered by the plaintiff. *Stiley v. Block*, 130 Wn.2d 486, 505, 925 P.2d 194 (1996). Under Washington law, each element of fraud must be established by "clear, cogent, and convincing evidence." *Id.* The circumstances constituting fraud must be pleaded with particularity, but state of mind, *e.g.*, malice, intent, or knowledge, may be alleged in general terms. Fed. R. Civ. P. 9(b).

Negligent misrepresentation must also be proven by "clear, cogent, and convincing evidence," and it requires a showing that (i) the defendant knew or should have known that the false information at issue was supplied to the plaintiff to guide such party in a business transaction; (ii) the defendant was negligent in obtaining or communicating the false information; (iii) the plaintiff reasonably relied on the false information; and (iv) the false information proximately caused the plaintiff's damages. *See Ross v. Kirner*, 162 Wn.2d 493, 499, 172 P.3d 701 (2007). An omission of a material fact cannot form the basis of a claim for negligent misrepresentation, *id.*, but an action for fraud (intentional misrepresentation) "may be asserted where one party to a transaction has a duty to speak . . . yet that party fails to state" a material fact. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 166, 744 P.2d 1032, 750 P.2d 254 (1987). The duty to speak need not arise from privity or a fiduciary relationship; rather, liability for concealment of material facts may be imposed when a defendant knows that information

will be passed along to the plaintiff or to a class of people whose reliance the defendant intends to induce.  *Id.* at 166-67.

Defendants argue that plaintiffs' fraud (intentional misrepresentation) and negligent misrepresentation claims are improperly based on statements made to third parties about plaintiffs rather than material facts represented to or concealed from plaintiffs.  The Court agrees.  Plaintiffs' claim that defendants made false complaints to the Washington State Insurance Commissioner does not support a claim of intentional or negligent misrepresentation.[5]  In their response to the pending motions to dismiss, plaintiffs do not indicate any manner in which this particular deficiency of their pleading could be cured, and thus, with respect to plaintiffs' fraud and negligent misrepresentation claims, defendants' motions to dismiss are GRANTED, and such claims are DISMISSED with prejudice.

**E.**     **Intentional Infliction of Emotional Distress (Outrage)**

In Washington, intentional infliction of emotional distress constitutes the same tort as outrage.  *Kloepfel v. Bokor*, 149 Wn.2d 192, 193 n.1, 66 P.3d 630 (2003).  Outrage has the following elements:  (i) extreme and outrageous conduct; (ii) intentional or reckless infliction of emotional distress; and (iii) actual result to the plaintiff of severe emotional distress.  *Id.* at 195; *Dombrosky v. Farmers Ins. Co. of Wash.*, 84 Wn. App. 245, 261, 928

---

[5] To the extent that defendants communicated information to the Washington State Insurance Commissioner regarding "any matter reasonably of concern" to the Commissioner, RCW 4.24.510, defendants are immune from civil liability, even if the statements were made in bad faith or are defamatory per se.  *See Akmal v. Cingular Wireless Inc.*, 300 Fed. App'x 463, 465 (9th Cir. 2008).  If defendants made their complaints in bad faith, however, they would not be entitled to the statutory damages described in RCW 4.24.510.

P.2d 1127 (1997). The claim must be predicated on conduct that is "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." _Kloepfel_, 149 Wn.2d at 196; _Dombrosky_, 84 Wn. App. at 261. The tort of outrage does not encompass mere insults, indignities, threats, annoyances, or petty oppressions. _Kloepfel_, 149 Wn.2d at 196. A plaintiff is assumed to be "hardened to a certain degree of rough language, unkindness, and lack of consideration." _Id._ The question whether particular conduct rises to the requisite level of outrageousness is "ordinarily a question of fact for the jury." _Dombrosky_, 84 Wn. App. at 261. The Court, however, may dismiss a claim if reasonable minds could not differ as to the conclusion that the alleged behavior was not sufficiently extreme. _Id._ at 261-62.

Whether plaintiffs even allege a claim of outrage is unclear, but to the extent they do, they have not pleaded sufficient facts to establish a plausible claim. In addition, in their response to defendants' motions, plaintiffs have not articulated any basis for giving them leave to amend. Thus, as to any claim of outrage, defendants' motions to dismiss are GRANTED, and such claim is DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, the Court ORDERS as follows:

(1)     Crouse's motion for partial dismissal, docket no. 29, is GRANTED in part and DENIED in part, as follows:

(a)     The following claims against Crouse are DISMISSED *without* prejudice and with leave to amend:  (i) the breach of contract claim; and (ii) the CPA claim based on violation of RCW 19.86.030 and/or .040;

(b)     The following claims against Crouse are DISMISSED with prejudice:  (i) the fraud and negligent misrepresentation claims; and (ii) the claim of outrage (intentional infliction of emotional distress);

(c)     The following claims remain pending against Crouse:  (i) the CPA claims premised on RCW 48.30.140 and .150 and on RCW 19.16.110 and .250 (*see supra* note 3); (ii) the claim for breach of the duty of good faith and fair dealing; (iii) conversion; (iv) unjust enrichment; and (v) intentional interference with business expectancy;

(2)     Pucin's motion to dismiss, docket no. 28, is GRANTED in part and DENIED in part, as follows:

(a)     The following claims against Pucin are DISMISSED with prejudice: (i) the CPA claim premised on violation of RCW 19.16.250; (ii) the fraud and negligent misrepresentation claims; and (iii) the claim of outrage (intentional infliction of emotional distress);

(b)     The following claim remains pending against Pucin:  the CPA claim based on noncompliance with RCW 19.16.110;

(3)     Any second amended complaint shall be electronically filed within twenty-one (21) days of the date of this Order, and any responsive pleading or motion shall be filed within twenty-one (21) days after such amended pleading is filed;

1     (4)    The Clerk is DIRECTED to send a copy of this Order to all counsel of

2 record.

3    IT IS SO ORDERED.

4    Dated this 6th day of November, 2017.

Thomas S. Zilly
United States District Judge