UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TOP NOTCH SOLUTIONS, INC. et al.,

    Plaintiffs,

v.

CROUSE AND ASSOCIATES
INSURANCE BROKERS, INC.;
McGRIFF, SEIBELS & WILLIAMS, INC.;
PUCIN & FREIDLAND, P.C.; and
JOHN/JANE DOES 2-50,

    Defendants.

C17-827 TSZ

ORDER

THIS MATTER comes before the Court on a motion to dismiss brought by defendant McGriff, Seibels & Williams, Inc. ("MSW"), docket no. 65. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

In their Third Amended Complaint filed on December 26, 2017, docket no. 50, plaintiffs joined MSW as a defendant, and they assert against MSW the following claims: (i) violation of Washington's Consumer Protection Act ("CPA"); (ii) defamation; and (iii) intentional interference with a business expectancy. MSW moves to dismiss all of the claims against it, but it has not addressed the allegations of defamation or business disparagement. The Court will therefore treat MSW's motion as seeking only partial dismissal.

ORDER - 1

1         According to the Third Amended Complaint, MSW is an insurance broker that
operates in various cities, including Seattle, Washington. 3d Am. Compl. at ¶ 1.2.2
(docket no. 50). In the summer of 2012, the International Brotherhood of Teamsters
("Teamsters") Local 117 created the Western Washington Taxicab Operators Association
("WWTCOA"). *Id.* at ¶ 3.3.1. Plaintiffs allege that the WWTCOA encouraged taxi and
for-hire drivers to join Teamsters Local 117 and to purchase liability insurance
exclusively through MSW. *Id.* Plaintiffs further assert that defendant Crouse and
Associates Insurance Services of California, Inc. ("Crouse"), another insurance broker
that does business in Washington, *id.* at ¶ 1.2.1, entered into a contract with MSW to
serve as MSW's Managing General Agent for the purpose of procuring insurance for the
WWTCOA program, *id.* at ¶ 3.3.3. Plaintiffs contend that Crouse and MSW intended for
their arrangement to divert business away from plaintiff Top Notch Solutions, Inc.
("Top Notch"), a Washington-based insurance agency, and other local brokers, *see id.* at
¶¶ 1.1.1, 3.3.3, & 3.3.7, and that the result of the agreement between Crouse and MSW
was to force Top Notch out of business and establish a monopoly, *id.* at ¶¶ 3.3.4-3.3.15.

**Discussion**

**A.**     **Standard for Motion to Dismiss**

        Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* When a complaint fails to adequately state a

ORDER - 2

claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." <u>Id.</u> at 558. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984). In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. <u>Twombly</u>, 550 U.S. at 570. If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.** **Consumer Protection Act**

The Court previously dismissed without prejudice and with leave to amend plaintiffs' CPA claims premised on RCW 19.86.030, which declares unlawful every contract in restraint of trade or commerce, and RCW 19.86.040, which prohibits monopolies. <u>See</u> Order at 8-10 (docket no. 38). The Third Amended Complaint provides additional details that were missing from plaintiffs' earlier pleading, but it still does not contain sufficient information to cross the threshold of plausibility. Plaintiffs allege that MSW, with Crouse's assistance, offered special pricing for taxi and for-hire operator liability coverage, and that MSW obtained Crouse's agreement to delay announcing insurance market and pricing information until two hours before Crouse made such information available to Top Notch. 3d Am. Compl. at ¶¶ 3.3.9-3.3.10. As a result, taxi

1 and for-hire operators lined up at the Teamsters Local 117 offices to submit insurance

2 applications through the WWTCOA program, and Top Notch lost the bulk of its clients.

3 *Id.* at ¶¶ 3.3.11-3.3.12.  Although plaintiffs have more clearly explained their theory of

4 how their business was harmed, they still have not indicated how competition generally

5 was injured.  Plaintiffs make no assertion that Crouse and/or MSW are now the only

6 brokers through which taxi and for-hire operators in a particular geographic area can

7 obtain liability insurance or that insurance agencies other than Top Notch were also

8 driven out of business.  Moreover, the current pleading links plaintiffs' damages far more

9 to the WWTCOA's decision to purchase insurance exclusively through MSW than to any

10 anti-competitive action taken by MSW.  Thus, MSW's motion to dismiss plaintiffs' CPA

11 claims under RCW 19.86.030 and .040 is GRANTED, and such claims are DISMISSED

12 without prejudice and with leave to amend.

## C.      **Intentional Interference with Business Expectancy**

To establish tortious interference with a contractual relationship or business expectancy, a plaintiff must prove:  (i) the existence of a valid contractual relationship or business expectancy; (ii) the defendant's knowledge of that relationship; (iii) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (iv) the defendant's interference had an improper purpose or used an improper means; and (v) resultant damage.  *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997).  "Exercising in good faith one's legal interests is not improper interference."  *Id.*  The Court is satisfied that plaintiffs have pleaded a plausible claim that MSW knew of Top Notch's relationship with Crouse and

ORDER - 4

intentionally interfered with it by inducing Crouse to withhold from Top Notch insurance market and pricing information until a time when Top Notch could not use such information to maintain its client base. Whether Top Notch can prove such claim is a question for another day. MSW's motion to dismiss plaintiffs' claim for intentional inference with a business expectancy is DENIED.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)	MSW's motion for partial dismissal, docket no. 65, is GRANTED in part and DENIED in part.

(2)	Plaintiffs' CPA claims under RCW 19.86.030 and .040 are DISMISSED without prejudice and with leave to amend. Plaintiffs shall not, however, file an amended complaint until after the Court rules on plaintiffs' pending motion, docket no. 80, to amend to join National Casualty Company as a defendant, which is currently noted for June 1, 2018, and sets a deadline for plaintiffs to electronically file an amended pleading and for MSW to file a responsive pleading or motion.

(3)	The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 25th day of May, 2018.

Thomas S. Zilly
United States District Judge