UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TOP NOTCH SOLUTIONS, INC. and
ROBERT RASHIDI,

                Plaintiffs,

  v.

CROUSE AND ASSOCIATES INSURANCE
BROKERS, INC., MCGRIFF, SEIBELS &
WILLIAMS, INC., and LAW OFFICES OF
PUCIN & FREIDLAND, P.C.,

                Defendants.

CASE NO. C17-0827-JLR-MAT

ORDER RE: DEFENDANTS'
MOTIONS FOR SANCTIONS

## INTRODUCTION

Defendants Crouse and Associates Insurance Brokers, Inc. (Crouse) and McGriff, Seibels & Williams, Inc. (MSW) filed motions for sanctions against plaintiffs Top Notch Solutions, Inc. and Robert Rashidi. (Dkts. 165 & 168.) Plaintiffs object to the requested sanctions. (Dkts. 180 & 181.) The Court, having considered the motions, responses, and the remainder of the record, finds defendants entitled to sanctions as set forth below.

## BACKGROUND

Plaintiffs initiated this matter in April 2017. (*See* Dkt. 1-1.) The Court set a June 4, 2018 deadline for the completion of discovery (Dkt. 39), later extended to January 7, 2019 (Dkt. 77). In

ORDER
PAGE - 1

early October 2018, the parties stipulated to a temporary stay in the proceedings and continuance of the trial and other dates to accommodate medical treatment and surgery for plaintiffs' counsel, Jan Brucker. (Dkts. 100 & 101.)

In a joint status report requested by the Court, plaintiffs committed to producing all outstanding written discovery by November 20, 2018 and proposed a deadline of April 1, 2019 for completion of discovery. (Dkt. 106 at 2.) In December 2018, defendants MSW and Crouse filed motions to compel responses to discovery requests propounded in May and June 2018 respectively. (Dkts. 112 & 121.) Crouse noted the absence of any responses in the three months prior to counsel's surgery or as of the agreed November 2018 due date, belated and incomplete responses to interrogatories received more than two months after counsel's surgery, and a failure to produce documents. (Dkts. 112 & 124.) MSW noted deficient responses to requests for production, including a failure to identify which documents in bulk productions were responsive to specific requests. (Dkt. 121.) Counsel for plaintiffs denied any need for Crouse's motion to compel given discovery responses submitted after her surgery (Dkts. 119 & 120), but did not respond to MSW's motion.

By Order dated January 17, 2019, the Court took note of a report from MSW that plaintiffs' counsel may have experienced a family medical issue and directed the parties to submit an updated status report. (Dkt. 127; *see also* Dkt. 126.) In early February 2019, counsel for plaintiffs partially responded to the motions to compel, describing her ongoing personal and family issues and continuing production of documents. (Dkts. 128 & 129.) She requested an extension of time to complete responses to the motions, summarize document production, and continue to supplement discovery responses, and objected to duplicative and redundant requests. In a joint status report submitted shortly thereafter, defendants noted plaintiffs had recently produced questionably

ORDER
PAGE - 2

relevant documents and described ongoing issues with the absence and/or sufficiency of responses to outstanding requests. (Dkt. 131.) The Court subsequently reset deadlines, including a discovery completion date of May 15, 2019, and referred all non-dispositive motions in this matter to the undersigned. (Dkt. 133.)

At a hearing on March 11, 2019, the undersigned heard argument on defendants' motions to compel. (Dkt. 137.) Counsel for plaintiffs conceded the failure to fully comply with requests for discovery, pointing to her health and other issues. The Court granted Crouse's motion in part, finding plaintiffs had waived any objections to responding to all interrogatories by failing to timely respond or submit a request for relief, but otherwise deferred a ruling. (*Id*.) The Court ordered counsel for plaintiffs to associate additional counsel to assist with the litigation and to submit a plan for completing discovery within thirty days of the plan submitted, and required that counsel identify with specificity the documents responsive to individual discovery requests.

Plaintiffs associated additional counsel and submitted a discovery plan. The plan set dates for satisfying various document requests and indicated plaintiffs would produce any additional documents to pre-existing and then pending discovery requests by May 10, 2019, and supplement with any additional documents found. (Dkt. 141.) On May 16, 2019, the day after the discovery deadline, plaintiffs' counsel notified counsel for defendants of additional documents to be produced (*see* Dkt. 152 at 3) and counsel for defendants requested a ruling on their motions to compel. Plaintiffs' counsel requested additional time to complete responses to outstanding discovery requests. (Dkt. 152.)

At a second hearing on June 5, 2019, counsel for plaintiffs indicated they were continuing to produce documents and, with the exception of some banking records, expected completion of discovery by June 10, 2019. Counsel for defendants argued prejudice from the late and still

ORDER
PAGE - 3

ongoing production, pointing to the need to update expert reports, the June 20, 2019 dispositive motion deadline, and expenses associated with the delays. Counsel for plaintiffs reiterated prior explanations for the delays. The Court found ample evidence plaintiffs had not complied with their discovery obligations and sanctions appropriate. The Court granted the motions to compel, but deferred a ruling on specific sanctions pending further briefing. (Dkt. 158.) The Court now considers herein MSW's Petition for Attorney's Fees and Discovery Sanctions (Dkt. 165) and Crouse's Motion for Sanctions (Dkt. 168).

## DISCUSSION

MSW seeks an award of attorney's fees related to its motion to compel and the failure to comply with discovery, and an order excluding as inadmissible any documents produced after the close of discovery on May 15, 2019. (Dkt. 165.) MSW argues its request for $17,356.50 in fees is commensurate with discovery abuses dating back more than a year from present. In support of an order of inadmissibility, MSW notes plaintiffs continued to produce over 1,880 documents after the close of discovery and have neither indicated their discovery production is complete, nor updated the discovery index.

Crouse seeks dismissal of plaintiffs' claims and monetary sanctions, including $10,325.50 in attorney's fees associated with its motion to compel and an additional $20,000.00. (Dkt. 168.) Crouse notes the discovery plan submitted by plaintiffs did not contemplate responses to unanswered interrogatories, despite the Court-ordered waiver of plaintiffs' objections. Crouse states that, while plaintiffs supplemented their responses, they have not withdrawn their objections and it remains unclear whether they continue to withhold information. Plaintiffs continued to produce over 4,000 documents after the May 15, 2019 deadline, without specificity as to responsiveness, produced some of those documents days after the date they had proposed for

discovery completion, and indicated additional transmissions of documents may be expected. (*See* Dkt. 169, ¶9 and Ex. 3.)

Plaintiffs respond that they provided significant information and documents even before the filing of the motions to compel and that, while they did require additional time to respond, defendants' discovery requests have been extremely broad and unduly burdensome. (Dkts. 180 & 181.) They deny any impediment to defendants' preparation of defenses or dispositive motions, stating the documents and information relied upon in pending motions for summary judgment were produced well before the discovery deadline or obtained from the deposition of plaintiff Robert Rashidi. In relation to Crouse's interrogatories, plaintiffs maintain the Court-ordered waiver of objections necessitated responses to more discovery requests than permitted under the rules and the production of documents with little to no relevance to this case. Plaintiffs' counsel notes the engagement of six additional individuals to assist in ongoing document review and redaction.

Plaintiffs reject the propriety of the sanctions requested. They assert defendants improperly seek compensation for time expended to review responsive discovery and ask that the Court defer a ruling on sanctions. They assert the proper remedy, if any, "is to now equalize the equation" by extending time and adjusting case event dates, up to and including the trial date. (Dkt. 180 at 3.)[1]

A.  Reasonable Attorney's Fees

Under Federal Rule of Civil Procedure 37(a), the Court "must" award reasonable expenses associated with a motion to compel discovery, including attorney's fees, if the moving party

---

[1] Plaintiffs also, citing to Federal Rule of Civil Procedure 56(d), request extension of the trial and other dates in the case schedule, including time for responding to pending motions for summary judgment. Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.") Because it is unrelated to and not properly entertained in relation to the motions for sanctions, the Court declines to address this request.

ORDER
PAGE - 5

prevails on the motion. Fed. R. Civ. P. 37(a)(5)(A). Exceptions to this rule apply if: (i) the movant filed the motion before attempting in good faith to obtain the discovery without court action; (ii) the opposing party's failure to comply was substantially justified; or (iii) other circumstances make an award of expenses unjust. *Id.*

As reflected in both the motions to compel and the motions for sanctions, and as discussed in two hearings, plaintiffs repeatedly and over a lengthy period of time failed to comply with discovery deadlines. These failures followed multiple attempts to obtain discovery without court action and necessitated the filing of motions to compel, the involvement of the Court, and the association of additional counsel. While plaintiffs' counsel offered explanations, they do not fully account for the delays and omissions in responding to defendants' requests for discovery. Moreover, despite the fact the deadlines for completion of discovery and for filing dispositive motions have passed (*see* Dkt. 133), and despite the association of additional counsel, plaintiffs have yet to complete their production of documents or responses to interrogatories. The arguments in opposition to the request for attorney's fees are not persuasive. It cannot be reasonably said either that the failure to comply with discovery was substantially justified or that other circumstances make an award of expenses unjust. Defendants MSW and Crouse are therefore entitled to reasonable attorney's fees under Rule 37(a)(5)(A).

In calculating the reasonableness of attorney's fees, the Court employs the "lodestar" method, calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Court looks to hourly rates "'prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" *Ingram*, 647 F.3d at 928 (quoted case omitted). The "relevant legal community" is

generally the forum in which the district court sits. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1993). When determining the reasonableness of the hours expended, a court should not consider hours that are "excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434.

"'Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it.'" *Camacho*, 523 F.3d at 978 (quoted source omitted). In *Kerr v. Screen Guild Extras, Inc.*, the Ninth Circuit adopted the consideration of twelve factors bearing on reasonableness:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d 67, 70 (9th Cir. 1975). Although several *Kerr* factors may be relevant to determine whether to adjust a fee award after the initial lodestar calculation, "[t]he Supreme Court has noted . . . that the *Kerr* factors are largely subsumed within the initial calculation of reasonable hours expended at a reasonable hourly rate, rather than the subsequent determination of whether to adjust the fee upward or downward." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1212 (9th Cir. 1985) (citing *Hensley*, 461 U.S. at 434 n. 9). *See also Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1264 n.11 (9th Cir. 1987) (district court need not address every *Kerr* factor). The "most critical" factor in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley*, 461 U.S. at 436.

1. MSW's fee request:

MSW's request for $17,356.50 in attorney's fees accounts for fees incurred by an associate attorney, omits fees incurred by two partners and a paralegal, and discounts the associate's $350.00 standard rate by ten percent, to $315.00 per hour. (Dkts. 166 & 167.) MSW asserts the complexity of this matter, the reasonableness of the billing rate as comparable to prevailing market rates, and the nature and extent of discovery abuses giving rise to the filing of its motion to compel. MSW submits invoices showing fees incurred and an affidavit analyzing the categories of billed time, amounting to a total of 55.1 hours of attorney time. (Dkt. 167.)

The Court finds both the total number of hours expended and the hourly rate reasonable, particularly with consideration of adjustments made to omit some fees and to discount a standard rate. Although the Court has considered the *Kerr* factors, the parties do not argue for or against any adjustment based upon them, and the Court's independent review does not support any adjustment. Nor is a lengthy discussion of the *Kerr* factors warranted in view of the reasonableness of the attorney's fees requested. The Court accordingly finds MSW entitled to the $17,356.50 in attorney's fees requested.

2. Crouse's fee request:

Crouse attests to incurring approximately $10,325.50 in attorney's fees, an amount accounting for 56.3 hours of work by two attorneys, who initially billed at rates of $175.00 and $200.00 per hour, with rates increased to $180.00 and $205.00 per hour in early 2019. (Dkt. 169, ¶¶11-13.) Counsel for Crouse attests these rates are competitive and likely lower than rates of other regional law firms. (*Id.*, ¶13.) Counsel provides a bill of costs outlining tasks performed for the fees sought and invoices itemizing fees for services billed. (*Id.*, ¶¶ 14-15 and Ex. 4.)

Crouse argues the amount of fees incurred is not necessarily commensurate with the time

expended and prejudice resulting from the one-year delay in responses, the failure to comply with discovery-related orders, and the fact discovery remains outstanding. Crouse avers a pattern in conduct dating prior to the current litigation. For example, an April 2017 Order Revoking Licenses by Washington State's Office of the Insurance Commissioner (OIC) describes the failure of plaintiffs and counsel Jan Brucker to provide requested information and documentation or otherwise respond and comply with OIC inquiries. (Dkt. 116, Ex. 4, pp. 19-21 at ¶¶11-20.) Crouse requests the imposition of an additional $20,000.00 in sanctions to account for these other factors.

Again, the Court finds both the total number of hours expended and the hourly rates reasonable. If anything, the rates charged by counsel for Crouse appear, as they suggest, lower than prevailing rates in this forum. In fact, while expending almost the same number of hours, the markedly higher rate charged by counsel for MSW results in a fee award almost double that due Crouse under the lodestar method. Given this discrepancy, and considering other factors under *Kerr*, the Court finds an upward adjustment of Crouse's fee award warranted. The Court, in particular, finds Crouse entitled to more than the lodestar figure given the extensive time and labor required to compel responses, the difficulties posed by bulk productions of documents, and Crouse's ultimate, but significantly delayed success in obtaining discovery to which it was entitled.

However, rather than the additional $20,000.00 in sanctions requested, the Court finds a reasonable fee award would be similar to that awarded MSW. The Court, as such, herein finds Crouse entitled to an additional $7,000.00 in sanctions, for a total award of $17,325.50.

B. Request for Dismissal

Crouse also requests dismissal of this action. Under Federal Rule of Civil Procedure 37(b)(2)(A)(v), the court may dismiss an action or proceeding in whole or in part for failure to

ORDER
PAGE - 9

obey a court order to provide or permit discovery.[2] *See also* Fed. R. Civ. P. 37(b)(2)(C) ("Instead of or in addition to [dismissal or other orders allowed under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.") Dismissal under Rule 37(b)(2)(A) may stem from an order granting a motion to compel, another written or oral order to provide or permit discovery, or a scheduling order under Rule 16. *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011).

Dismissal is a harsh penalty, imposed only in extreme circumstances. *Malone v. United States Postal Service*, 833 F.2d 128, 130 (9th Cir. 1987). However, where "counsel or a party has acted willfully or in bad faith in failing to comply with rules of discovery or with court orders enforcing the rules or in flagrant disregard of those rules or orders," the Court may exercise its discretion to dismiss. *G-K Properties v. Redevelopment Agency of San Jose*, 577 F.2d 645, 647 (9th Cir. 1978). That discretion will be upheld unless it falls "clearly outside the acceptable range of sanctions." *Malone*, 833 F.2d at 130.

The Court considers five factors before dismissing for failure to obey a court order to provide or permit discovery: "'(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic

---

[2] Only non-dispositive motions have been referred to the undersigned. (Dkt. 133.) Had the Court found the requested sanction of dismissal warranted, it would have addressed the request in a Report and Recommendation. Finding an absence of support, the Court addresses the request as set forth herein. Should Crouse take issue with this finding, it may file objections pursuant to Rule 72 or a separate dispositive motion.

ORDER
PAGE - 10

sanctions.'" *Dreith*, 648 F.3d at 788 (quoted sources omitted). The Ninth Circuit has held that it "'may affirm a dismissal where at least four factors support dismissal, or where at least three factors strongly support dismissal.'" *Id.* (quoting *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)).

Crouse argues dismissal is warranted due to plaintiff's repeated, willful noncompliance with discovery and Court orders, and that both the order from the hearing on March 11, 2019 and the February 14, 2019 amended case scheduling order may serve as a basis for sanctions. Crouse points to repeated and still ongoing delays in discovery as impeding the expeditious resolution of this litigation and the Court's ability to manage its docket. It maintains prejudice, noting it filed for sanctions on the eve of the dispositive motion deadline, with discovery still incomplete. Crouse counters the public policy favoring disposition on the merits with the fact plaintiffs either knew or should have known how to respond to discovery requests inquiring into the information and documents on which they base their claims. Finally, Crouse maintains lesser sanctions, including exclusion of documents produced after the discovery deadline and/or attorney's fees, would be ineffective and not remedy the prejudice that has already occurred. It argues any continuation of the trial date would reward plaintiffs and their dilatory tactics.

There is no question the failures to timely and fully comply with discovery requests have interfered with the expeditious resolution of this matter and the Court's ability to manage its docket. Defendants have been prejudiced by delays impacting their ability to prepare their expert witnesses and dispositive motions, and to otherwise defend against plaintiffs' claims. The Court finds the explanations from plaintiffs' counsel for delayed and deficient responses wanting. It is further troubled by the fact discovery remains ongoing and by the request for yet more time to complete discovery and to extend other case deadlines.

The Court is not, however, persuaded dismissal is an appropriate sanction at this juncture. Counsel for plaintiffs offered a reasonable explanation for some delay in the completion of discovery. Plaintiffs appear to have substantially complied with outstanding discovery requests and explain a need to supplement following waiver of their objections. While the lengthy and ongoing delays raise serious questions as to counsel's ability to satisfy her obligations to her clients, there is little to show the lack of compliance has been willful or in bad faith. Finally, public policy favors a disposition on the merits and less drastic sanctions, as found above and below, are available.

The Court, in sum, finds insufficient support for the existence of extreme circumstances warranting dismissal. *Cf. Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (upholding dismissal where plaintiff had acted in "flagrant bad faith" and "callous disregard" of the rules by failing to file timely responses to discovery requests and eventually filed "grossly inadequate" responses); *Allen v. Exxon Corp. (In re Exxon Valdez)*, 102 F.3d 429, 432-33 (9th Cir. 1996) ("The history of these proceedings reflects a virtually total refusal by appellants over a period of more than two years to comply with discovery obligations and orders."; upholding dismissal following repeated warnings that continued noncompliance would result in dismissal, appellants "had provided either no discovery or so little as to be tantamount to no discovery at all", and it was undisputed the failure to respond to discovery and comply with "orders to do so was knowing and deliberate."); *Moneymaker v. CoBen (In re Eisen)*, 31 F.3d 1447, 1451-56 (9th Cir. 1994) (upholding dismissal involving a four-year failure to prosecute, the absence of an adequate excuse for the delay, and prejudice including the prevention of closing a bankruptcy proceeding and the loss of a witness); and *G-K Properties*, 577 F.2d at 646-49 (upholding dismissal upon finding direct disobedience to a court order requiring production of specific documents, repeated

by the court on a number of occasions, and the provision of the documents only after the filing of a motion to dismiss for failure to comply with the court order). The undersigned therefore declines to recommend dismissal under Rule 37(b)(2)(A).

C.  Other Sanctions

As an additional sanction, MSW requests the Court exclude as inadmissible all documents produced after the close of discovery on May 15, 2019. MSW notes that Rule 16 permits modification of the Court's scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause under Rule 16(b) "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the party seeking modification "was not diligent, the inquiry should end." *Id.* MSW asserts the existence of ample evidence plaintiffs were not diligent in complying with the Court's discovery deadlines and plaintiffs' failure to demonstrate good cause.

Pursuant to Rule 16(f)(1)(C), the Court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." *See also* Fed. R. Civ. P. 16(f)(2) (providing for payment of expenses, including attorney's fees, instead of or in addition to any other sanction for noncompliance with Rule 16, unless the noncompliance was substantially justified or other circumstances make an award unjust). In addition to an order of dismissal under subpart (v), the Rule 37 orders incorporated by reference into Rule 16(f) include the following:

> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;

ORDER
PAGE - 13

>                . . .
>
>                (vi) rendering a default judgment against the disobedient party; or
>
>                (vii) treating as contempt of court the failure to obey any order
>                except an order to submit to a physical or mental examination.

Rule 37(b)(2)(A).[3]

The Ninth Circuit has clarified why Rule 16 deadlines must be taken seriously:

> [I]n these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence.

*Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). While "[d]eadlines must not be enforced mindlessly," and good reason may exist for a lack of compliance, *id*., district courts have wide latitude to control discovery and their rulings enforcing compliance with deadlines will be overturned only in the absence of a clear abuse of discretion. *Cornwell v. Electra*

---

[3] Other provisions of Rule 37 providing for sanctions do not apply. Rule 37(c) allows for exclusion of information or witnesses for failure to provide initial disclosures under Rule 26(a) or supplemental disclosures or responses under Rule 26(e), unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). Rule 37(d) provides for sanctions where a party "fails to serve its answers, objections, or written response" to interrogatories or requests for inspection, Fed. R. Civ. P. 37(d), but only applies where a party does not serve *any* answers, objections, or written response, *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1339-1340 (9th Cir. 1985). In addition, if a Court finds Rule 37 does not provide an adequate remedy, additional means may be employed to sanction a party based on the Court's inherent power to sanction. *Haeger v. Goodyear Tire & Rubber Co.*, 793 F.3d 1122, 1132 (9th Cir. 2015) (Rule 37 "is not the exclusive means for addressing the adequacy of a discovery response.") However, "[b]efore awarding sanctions pursuant to its inherent power, 'the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith.'" *Id*. (quoting *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (some internal quotation marks omitted). MSW does not here offer an argument supporting a finding of bad faith.

*Central Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006) (declining to limit "district court's ability to control its docket by enforcing a discovery termination date, even in the face of requested supplemental discovery that might have revealed highly probative evidence, when the plaintiff's prior discovery efforts were not diligent.") (cited sources omitted).

In this case, plaintiffs continued to produce documents after the May 15, 2019 discovery deadline established by the Court's amended scheduling order. Neither the health and family issues of plaintiffs' primary counsel, nor the need to respond to additional interrogatories sufficiently account for the failure to comply with this deadline. The Court twice advised counsel at hearing of the need to comply with Court rules and deadlines and the possibility of harsh sanctions, including up to dismissal, if she failed to do so. Despite these admonitions, and despite associating counsel and acquiring other assistance for review and redaction, it appears responses to discovery requests and/or updates to the discovery index remain incomplete. Indeed, plaintiffs continue to seek extension of case deadlines in responding to the motions for sanctions.

Plaintiffs have not been diligent and do not demonstrate good cause for their failure to comply with their discovery obligations, case deadlines, and other Court orders. The Court finds reasonable MSW's request for an order excluding as inadmissible any documents produced after the May 15, 2019 discovery deadline.[4]

---

[4] It should be noted that neither party discusses the specific documents subject to the request for an order of inadmissibility or whether the exclusion of those documents could have a dispositive effect on this case. If effectively case-dispositive, further inquiry would be necessary, including consideration of the five factors outlined above in relation to the sanction of dismissal. *See generally Dreith*, 648 F.3d at 788; *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001); *Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997); *Galentine v. Holland Am. Line - Westours, Inc.*, 333 F. Supp. 2d 991, 993-94 (W.D. Wash. 2004). Such an impact appears unlikely given plaintiffs' contention "the documents now being produced[] likely have little or no relevance to any parties' claims." (Dkt. 180 at 5.) However, should this issue require further consideration, plaintiffs' counsel may raise it in objections to this Order or in a separate motion.

ORDER
PAGE - 15

## CONCLUSION

MSW's Petition for Attorney's Fees and Discovery Sanctions (Dkt. 165) is GRANTED and Crouse's Motion for Sanctions (Dkt. 168) is GRANTED in part and DENIED in part. MSW is awarded the $17,356.50 in attorney's fees requested and Crouse is awarded a total of $17,325.50 in fees. Any documents produced by plaintiffs after the close of discovery on May 15, 2019 shall be inadmissible.

DATED this 29th day of July, 2019.

Mary Alice Theiler
United States Magistrate Judge